[No. 6908.  Decided December 20, 1907.]

J. F. WITHIAM, *Appellant*, v. TENINO STONE QUARRIES,
*Respondent*.[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OBEDIENCE TO
COMMANDS—QUESTION FOR JURY.  Where an employee was injured
in the fall of a scaffold through the negligence of a foreman in
ordering him to knock a brace loose from the scaffold, whether
obedience to the command was so hazardous as to preclude a re-
covery was for the jury, and their verdict is conclusive.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered April 10, 1907, upon sus-
taining defendant's motion for judgment notwithstanding the
verdict, in an action for personal injuries sustained by an
employee by falling from a scaffold.  Reversed.

*Brooks & Bartlett*, for appellant.
*Charles A. Riddle*, for respondent.

RUDKIN, J.—On the 1st day of September, 1906, the plain-
tiff in this action was injured by falling from a scaffold
while in the employ of the defendant on the high school build-
ing in the city of Walla Walla, then in course of construction.
At the time of receiving the injuries complained of, the build-
ing had advanced to about the second story and was ready for
the cornice.  Stones furnished by the defendant for window-
caps were being put in place by means of a derrick.  To aid
in this work a scaffold theretofore erected around the outside
of the building was used by the workmen.  This scaffold con-
sisted of uprights 24 feet in length extending from the ground
six feet distant from the building.  Ledgers were nailed to
these uprights, upon which footlocks rested extending from
the building.  The planking on which the workmen stood were
laid on these footlocks, and the scaffold was held in place by

[1]Reported in 92 Pac. 900.

braces nailed to the uprights above and to the window frames below. The plaintiff had worked on the building in one capacity or another from the time construction work commenced up to the time of the accident, and had assisted from time to time in the construction of the scaffold upon which he was standing at the time of his fall. Other braces had been removed from time to time prior to the removal of the brace which caused the scaffold to collapse. The plaintiff thus describes the manner in which he received his injuries:

"Q. Just state to the jury in your own way the manner in which you were injured and under whose instructions you were acting at the time you were so injured? A. Under Mr. Murray's instructions. I was outside of the building on the scoffold, and he was inside; there was a wall between us, and we were about to hoist a window-cap up to set it, and he handed me a hammer and told me to knock the brace loose from that scaffold; I did so and handed him back the hammer and started to go back through the window on the inside, and the scaffold fell with me, letting me down to the ground."

The act of the foreman in directing the plaintiff to knock the brace loose is the sole ground of negligence charged in the complaint. The case was submitted to a jury and a verdict returned in favor of the plaintiff in the sum of $1,000. The court, on motion of the defendant, directed a judgment in its favor, notwithstanding the verdict, and from that judgment the present appeal is prosecuted.

The respondent relies for an affirmance of the judgment on the rule announced by this court in *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410, and other like cases, which in substance is as follows:

"In a case where the servant is one of mature age and experience, as in this case, the law never imposes the duty on the master of becoming eyes and ears for his servant, where there is nothing to prevent the servant from using his own eyes and ears to avoid danger. . . . The law requires that men shall use the senses with which nature has endowed them; and, when without excuse one fails to do so, he alone must suffer

the consequences, and he is not excused where he fails to discover the danger if he made no attempt to employ the faculties nature has given him."

That rule is no doubt correct where the servant is *pro tempore* his own master and is under obligation to look after his own welfare and safety. But where the servant is acting under a specific command from his master, or the master's representative, a different rule applies. In the latter case the rule is thus stated in § 439 of Labatt on Master and Servant:

"In other cases the extent of the servant's right of action is indicated by a restrictive form of statement, and he is said to be entitled to obey a specific command of his superior without incurring thereby the imputation of contributory negligence, unless the execution of that command involves a hazard to which no ordinarily prudent person would have subjected himself; or unless a reasonably prudent person in his situation and with his knowledge of the danger would not have obeyed the command; or unless the danger was so 'apparent,' or 'obvious,' or 'clear,' or 'manifest,' or 'glaring,' or 'imminent' that a person of that average prudence and intelligence whose hypothetical conduct is the test of the existence or absence of negligence would have declined, under the given circumstances to have complied with the order. In other words, if a danger is not so absolute or imminent that injury must almost necessarily result from obedience to an order, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order."

See, also, Wood, Law of Master and Servant, §§ 387 *et seq.* This rule had been repeatedly approved by this court. *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Goldthorpe v. Clark-Nickerson Lumber Co.*, 31 Wash. 467, 71 Pac. 1091; *Grout v. Tacoma Eastern R. Co.*, 33 Wash. 524, 74 Pac. 665; *Gaudie v. Northern Lumber Co.*, 34 Wash. 34, 74 Pac. 1009; *Crow v. Northern Pac. R. Co.*, 45 Wash. 605, 88 Pac. 1022.

The only question in this case therefore is, was the danger so apparent and imminent that a man of average prudence and

intelligence would have refused to obey the master's command?
The master of course is not now estopped to claim that the
act of the servant was foolhardy and reckless, but, in view of
his previous command, such a defense should be viewed with
some suspicion and scrutinized with care.   It is reasonable to
assume that neither the appellant nor the foreman deemed the
act overhazardous at the time, and evidently the jury did not
so consider it.   It seems to us that reasonable minds might
well differ as to the danger that might result from the act
which the appellant was directed to perform, and in such cases
the jury's verdict is conclusive on the court, in so far as its
right to direct a judgment is concerned.

The judgment of the court below is therefore reversed, and
the cause is remanded for further proceedings.

HADLEY, C. J., DUNBAR, and CROW, JJ., concur.