[No. 10474.  Department One.  June 3, 1913.]

MURDOCK CAMPBELL, *Respondent*, v. E. N. JONES *et al.*,
*Appellants.*[1]

TRIAL—VERDICT—SPECIAL FINDINGS—INCONSISTENCY.  In an action
for personal injuries caused by the negligence of defendant's fore-
man in causing a rock to roll down a steep hillside, a special find-
ing that the foreman's stepping on the rock and causing it to roll
was "purely accidental" is not so inconsistent with a general verdict
for plaintiff as to control the judgment; since such inconsistency
must be clear, and the definition of "accident" does not necessarily
negative negligence; especially where the finding is largely a con-
clusion not necessarily called for by other special findings.

Appeal from a judgment of the superior court for Spokane
county, Webster, J., entered February 16, 1912, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an employee in rail-
road construction work.  Affirmed.

*John M. Bunn*, for appellants.

*W. H. Plummer* and *Henry Jackson Darby*, for respondent.

PARKER, J.—This is an action to recover damages for per-
sonal injuries claimed by the plaintiff to have resulted to him
from the negligence of the defendants' foreman.  A trial be-
fore the court and a jury resulted in a general verdict and
judgment in favor of the plaintiff, from which the defendants
have appealed.  Upon a former trial of the cause in the supe-
rior court, it was withdrawn from the jury upon the chal-
lenge of the defendants to the sufficiency of the evidence to
sustain any verdict against them.  This disposition of the
cause by the superior court was, upon appeal to this court,
reversed and remanded for a new trial as to these defendants,
though it was affirmed as to the defendant the Chicago, Mil-
waukee & Puget Sound Railway Company.  Our decision on
that appeal is reported in 60 Wash. 265, 110 Pac. 1083,

[1]Reported in 132 Pac. 635.

where a somewhat more detailed statement of the facts is made than is necessary here.

The evidence introduced upon the new trial in the superior court was in substance the same as upon the first trial. Contention is again made here in behalf of the appellants that the trial court erred in overruling the challenge to the sufficiency of the evidence to warrant recovery by respondent as against these appellants. A review of the questions involved in this contention would be little else than a repetition of what was said by us on the former appeal. We deem it sufficient to say that we adhere to the views there expressed, and conclude that the evidence was such as to call for the decision of the jury upon the question of appellants' negligence. Nor do we deem it necessary to say more than was said in that decision touching the question of the claimed relation of fellow servant existing between respondent and appellants' foreman.

It is further contended by counsel for appellants that the general verdict returned by the jury against the appellants should not be regarded as controlling the judgment, in view of the special findings in answers to interrogatories made by the jury; but that the latter established certain specific facts which are inconsistent with respondent's right to recover, which facts should control the judgment. It is insisted that, for this reason, the trial court erred in denying appellants' motion for judgment notwithstanding the verdict. The special findings made by the jury are as follows:

"(1) 'Did witness Lundin cause the rock in question to fall by stepping on a stick or kicking a stump?' Answer, 'Yes.' "

"(2) 'Did witness Lundin shout a warning to the plaintiff and other men below him immediately after he saw the rock falling?' Answer, 'Yes.' "

"(3) 'Did witness Lundin, before he went up the hill, tell the men below, the plaintiff among others, that he was going up to get wood for the fire?' Answer, 'No.' "

"(4). 'Was the starting of the rock purely accidental?' Answer, 'Yes.' "

Appellants were contractors engaged in railway construction work for the Chicago, Milwaukee & Puget Sound Railway Company. Respondent was in their employ as a laborer. Lundin was foreman for appellants over respondent and other laborers. Respondent was injured by the falling of a rock, which was dislodged by Lundin from a steep hillside, and which fell upon respondent. The general verdict necessarily rests upon the theory of Lundin's negligence in dislodging the rock, and must control the judgment unless it be held that the special findings, especially the fourth above quoted, are controlling upon the question of Lundin's negligence. It is urged that the finding that the starting of the rock was "purely accidental" is in effect a specific finding that Lundin was not negligent. Our attention is called to authorities which seem to recognize the word "accident" or "accidental" as meaning the happening of an event without fault or negligence on the part of any one. There are no doubt connections in which the use of the word would have such a meaning, but it is often used as expressing the thought of an event occurring without design or purpose, or unintentionally on the part of any one. Given the latter meaning, it would not negative the thought of negligence on the part of one whose physical act the occurrence followed. Neither is it infrequent to hear reference to an occurrence as an "accident" even though the speaker knows it was the result of some one's negligence. Among the definitions in the Standard Dictionary we find the following:

"Accident—1. Anything that happens; an occurrence; event. Especially: (1) Anything occurring unexpectedly, or without known or assignable cause; a contingency, as the *accidents* of fortune. (2) Any unpleasant or unfortunate occurrence that causes injury, loss, suffering, or death; a casualty; mishap; as, a railroad *accident*."

"Accidental—1. Happening or coming by chance or without design; casual; fortuitous; taking place unexpectedly,

unintentionally, or out of usual course; as an *accidental* meeting."

The use of the word in its strict legal sense is probably more in harmony with appellants' contentions (Black's Law Dictionary p. 15) ; but we must remember that the word is here used by laymen, the jurors, and that it was also used in the face of their general verdict which necessarily rests upon the theory of the foreman's negligence. The instructions given by the court to the jury render this plain. These observations, we think, are enough to clearly show that there is at least room for argument as to the meaning which the jurors attributed to the word. We recognize the rule that special findings, when inconsistent with the general verdict, control, and that the judgment must be rendered accordingly. Rem. & Bal. Code, § 365. But according to repeated decisions of this court and the general rule prevailing elsewhere, it must clearly appear that such special findings are inconsistent with the general verdict. Probably as clear a statement of this rule as can be found in the books is that made in 2 Thompson on Trials (2d ed.), § 2693, as follows:

"The court will not strain the language of the special findings to override the general verdict. If possible, they will be interpreted so as to support the verdict rather than overturn it. No presumption will be made in their favor; 'nor will they control the general verdict, unless they are invincibly antagonistic to it.' "

Expressions of this court in harmony with this view may be found in the following decisions: *Mercier v. Travelers' Ins. Co.*, 24 Wash. 147, 64 Pac. 158; *McCorkle v. Mallory*, 30 Wash. 632, 71 Pac. 186; *Gaudie v. Northern Lum. Co.*, 34 Wash. 34, 74 Pac. 1009; *Cameron v. Stack-Gibbs Lum. Co.*, 68 Wash. 539, 123 Pac. 1001. In this connection, it is also worthy of note that the trial court did not give to the jury any instructions touching the meaning of the word "accidental," as used in the interrogatories submitted to the jury.

Another thought that lends support to our conclusion is

that the fourth interrogatory and answer can scarcely be said to be the finding of a specific fact. It is rather an inference or conclusion to be drawn from other facts, and we do not think that the preceding interrogatories and answers necessarily call for the inference or conclusion stated in the answer to the fourth interrogatory. In *Gaston v. Bailey,* 14 Ind. App. 581, 43 N. E. 254, the court observed:

"The jury find that the appellee, while passing along and over the sidewalk, 'exercising due and proper care, stepped upon the cover,' and it slipped off and she fell with one limb in the coal hole. No facts are found as to the manner in which she was walking or what precautions she took to avoid being injured. A finding that a party used due diligence, that he exercised ordinary care under the circumstances, or that he was not guilty of contributory negligence, are all inferences to be drawn from the facts found. Whether inferences of law or of fact, we need not now determine. If inferences of fact, as seems to be the intimation in the case of *Cincinnati, etc., R. W. Co. v. Grames,* 136 Ind. 39, it was proper for the jury to so find, but the finding of such an inference is of no value and cannot be considered, unless the facts from which the inference is drawn are also found. *Walkup v. May,* 9 Ind. App. 409. At most, the finding that appellee was 'exercising due and proper care' is but an inference, and, no facts having been found from which such an inference could be drawn, we must disregard it."

We conclude that, while there is some room for argument in support of the theory that the special findings are inconsistent with the general verdict, they are not so clearly inconsistent as to warrant the holding that the general verdict should not control the judgment.

The judgment is affirmed.

CROW, C. J., MOUNT, and GOSE, JJ., concur.