## PLANTERS' OIL CO. v. KEEBLER.
### (No. 8006.)
(Court of Civil Appeals of Texas. Ft. Worth.
July 4, 1914. Rehearing Denied
Oct. 17, 1914.)

1. MASTER AND SERVANT (§ 129*) — INJURIES TO SERVANT—"PROXIMATE CAUSE."

Where a servant, in attempting to place a belt on a pulley, high above the floor, had his clothing caught in a protruding set screw, so that he was hurled over the shaft and down upon the floor, the negligence of the master in permitting the existence of the set screw was the proximate cause of the injury; for it could be foreseen that employés would necessarily come close to the screw in replacing the belt on pulleys, and the primary negligence will be considered the proximate cause of the injury, when the injury was the natural and probable result of such primary negligence, even though another cause intervened, where a person of ordinary prudence, under the circumstances, ought reasonably to have foreseen such an injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*

For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

2. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

An employé who did not know of the existence of a protruding set screw on the shaft turning the pulley on which he was trying to replace a belt did not assume the risk of injury from having his clothing catch on the screw, though he brought himself closer to the shaft than necessary.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

3. MASTER AND SERVANT (§ 234*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Nor in such case is he guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686, 706–709; Dec. Dig. § 234.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL.

The refusal of a charge covered by the charges given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**5. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.**

A charge submitting a phase of the case in accordance with the testimony of the injured employé is not inapplicable to the facts because the defendant master offered much evidence in contradiction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

**6. TRIAL (§ 256*)—INSTRUCTIONS—ADDITIONAL REQUESTS.**

In an action by a servant hurt by his clothing catching on a protruding set screw on a shaft, defendant cannot complain of a charge, that defendant was bound to maintain the shaft in a reasonably safe condition, on the ground that it failed to submit to the jury all the circumstances bearing on how plaintiff's clothing came in contact with the screw; for, the charge being the correct statement of law, defendant, if desiring amplification, should have requested additional charges.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

**7. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.**

In an action by a servant hurt when his clothing caught on a set screw protruding from a rapidly revolving shaft, where the servant testified that he did not know of the existence of the screw because the place was dimly lighted and the shaft in motion, although he had several times replaced belts which had slipped off of pulleys, a charge on contributory negligence which informed the jury that, if the existence of the set screw was unknown to the servant, and if it was not obvious, then the servant was not negligent in leaning close to the shaft in putting on the belt, is not bad as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

**8. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—JURY QUESTION.**

In a personal injury action by a servant, whose clothing caught on a projecting set screw on a rapidly revolving shaft, the question whether the servant was guilty of negligence contributing to his injury in leaning close to the shaft, instead of holding to a board so that he could reach out and with one hand replace the belt which had slipped off of a pulley, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

Appeal from District Court, Parker County; F. O. McKinzie, Judge.

Action by Homer Keebler against the Planters' Oil Company. From the judgment for plaintiff, defendant appeals. Affirmed.

Stennis & Grindstaff, of Weatherford, and James C. Wilson, Capps, Cantey, Hanger & Short, and David B. Trammell, all of Ft. Worth, for appellant. Hood & Shadle, of Weatherford, for appellee.

DUNKLIN, J. Homer Keebler instituted this suit against the Planters' Oil Company to recover damages for personal injuries, and from a judgment in favor of the plaintiff, the defendant has appealed.

Appellee admits the correctness of the following statement of the nature of the suit, as contained in appellant's brief:

"Appellee, Homer Keebler, while engaged in his duties as 'night oiler' in the seedhouse of appellant's oil mill at Weatherford, Tex., on the morning of January 29, 1913, and while attempting to replace a belt on a line shaft, was injured. He instituted this suit against the appellant, alleging the existence of a set screw or bolt with a square head and square edges in the coupling of the line shaft in appellant's seedhouse; that the screw extended or projected from the surface of the line shaft and coupling 1⅛ inches, and was extremely dangerous which danger was alleged to be unknown to appellee; and averred negligence in so allowing the set screw to extend and project from the line shaft and coupling in question. It was further averred that plaintiff was unacquainted with the presence of the set screw.

"The manner in which appellee was injured, as stated in his petition, was as follows: 'That while, as aforesaid, belting and attempting to belt and put on said belt and to start same on its pulley, as aforesaid, in the usual and customary way and manner, and using the only means provided at that time by defendant company, and using the care and caution of an ordinarily prudent man, plaintiff's clothing was caught in front by said set screw or bolt, and he was violently and with great force jerked off of said runboard and with terrific force pulled over against said line shaft, pulleys' belts, and machinery and other material, hurled aloft, and violently thrown down and cast on the floor, rendering him unconscious and almost killing him, he remaining unconscious for quite a while.'

"Appellant was also alleged to be negligent in having a narrow runboard next to the line shaft, on which an employé replacing belts on the pulleys on the line shaft was required to stand; in keeping the runboard unclean, oily, and slippery; in not having a guard or banister between the shaft and runboard; and in not having sufficient lights. The only ground of negligence submitted to the jury as a basis of recovery, however, was that with reference to the set screw.

"Appellant replied with specific denials of appellee's allegations of negligence, etc., and pleas of contributory negligence and assumed risk.

"The place where the injury occurred was in appellant's seedhouse, which was approximately 120 by 400 feet in size. The line shaft in question was elevated something like 12 or 13 feet from the floor, and the runboard along same being some 2 or 3 feet lower. The runboard was 7½ or 8 inches wide."

The evidence shows that on the night in controversy the belt connecting the conveyor with the line shaft got off the pulley of the line shaft, and in order to replace it plaintiff ascended to the running board, and while standing on the running board and attempting to replace the belt upon said pulley, he came in contact with the shaft, and was thrown to the floor below, and thereby sustained the injuries for which he recovered damages.

The line shaft runs practically east and west, and the running board was some 22 inches to the south of it. The line shaft was composed of at least two sections, the ends of which were fastened through the means of a coupler, the middle of which coupler was in the form of a disc. From each side of the disc were extensions into which the ends of the line shaft were inserted and held in place by set screws running through the coupler into the line shaft.

The pulley upon which plaintiff was attempting to place the belt at the time of his injury was near one edge of the coupler. The head of the set screw at that edge of the coupler was not sunken to a level of the surrounding surface, but extended above the surface of the coupler to a height estimated by different witnesses from five-eighths of an inch to one and one-eighth inches. The head of the set screw was square, and the distance across it was about five-eighths of an inch. Plaintiff testified that he came in contact with the line shaft while he was "surging to put the belt on," but further testified that he could not tell how he happened to come in contact with it, except that he was positive that he did not fall against it, and that he was standing on the running board at the time he was attempting to place the belt on the pulley. There was other evidence, however, which we deem it unnecessary to set out, which was sufficient to sustain a finding by the jury that, while plaintiff was attempting to place the belt on the pulley, his clothing was caught by the set screw in the coupler referred to above, and he was thereby hurled aloft and thrown to the floor below. There was also evidence sufficient to sustain a finding by the jury that the defendant was guilty of negligence in failing to so lower the head of the set screw as to render it impossible to catch in the clothing of operatives engaged as the plaintiff was engaged.

[1-3] By its first assignment appellant insists that the court erred in refusing to give its requested special instruction to the jury to render a verdict in favor of the defendant. By the first proposition submitted under this assignment the contention is made that it clearly appears that:

"Appellee's becoming overbalanced and falling into the line shaft or jerking himself over on the line shaft in an effort to replace the belt was a proximate and efficient cause of his injury (for which appellant would not be liable), and not the projection or protrusion of the set screw."

Many authorities are cited to sustain the proposition so advanced, including Tex. & Pac. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, which is the leading authority in this state upon the law of proximate cause; also Dayton Lbr. Co. v. Hastings, 152 S. W. 863; So. Kansas Ry. Co. v. Emmett, 139 S. W. 44; C., R. I. & M. Ry. Co. v. Harton, 36 Tex. Civ. App. 475, 81 S. W. 1236; Yecker v. S. A. T. Co., 33 Tex. Civ. App. 239, 76 S. W. 780; A., T. & S. F. Ry. Co. v. Seeger, 44 Tex. Civ. App. 534, 98 S. W. 892; B. E. L. & P. Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898; I. & G. N. Ry. Co. v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 661; and many decisions from other states. We believe the following is a substantially correct statement of the rule announced in Tex. & Pac. Ry. Co. v. Bigham, supra. Even though there have been intervening agencies or causes between the primary cause and an injury, yet the primary cause, when amounting to negligence other than a wanton wrong, will be considered the proximate cause of the injury: First, when it appears that the injury was the natural and probable result of such primary cause; and, second, when it can be said that a person of ordinary prudence, in the light of the attending circumstances, ought reasonably to have foreseen an injury of like character as such a consequence. In that case it was held that the negligence of the railway company in maintaining defective fastenings to a gate opening into its stock pens was not the proximate cause of an injury to a shipper who placed his cattle in the pens and was run over by the cattle when they escaped through the gate by reason of such defective fastenings, because such an injury could not reasonably have been anticipated as a result of such negligence.

The case of Seale v. G., C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, was a suit by Mrs. Seale for damages for the death of her minor daughter resulting from her clothing catching fire while she, together with her mother, was attempting to extinguish burning grass upon the land of plaintiff near her dwelling and fence. It was alleged that through the negligence of the railway company fire had originated upon its right of way and from there had spread to plaintiff's land adjoining the same. In that case our Supreme Court held that the railway company should have anticipated that fire so started would endanger the plaintiff's property, but that it could not reasonably have anticipated that any one in attempting, even in a careful manner, to extinguish the fire after it had spread upon adjoining property would lose his or her life by clothing catching on fire, and for that reason held that the negligence of the railway company in starting the fire was not the proximate cause of the death of plaintiff's child.

Dayton Lbr. Co. v. Hastings, supra, was a suit in which damages were sought for an injury sustained by Hastings as a result of his hand coming in contact with one of the saws of the lumber company's mill. A "slasher chain" had broken, or become unhooked, and had wrapped around one of the sprocket wheels. In pulling at the chain to unwind it from the sprocket, the chain broke, and caused Hastings' arm to fly back into the saws. The basis of liability was a charge of negligence in maintaining the chain in such a defective condition as to cause it to break under those circumstances. In that case it was held that the negligence, if any, so charged was not the proximate cause of the injury, but the opinion shows that that holding was based upon the conclusion that such an injury could not reasonably have been foreseen as a result of the defects in

the chain, and in the course of the opinion the following is said:

"To hold the defendant liable to the plaintiff for the damages sustained by him, we would be required to hold that defendant ought to have reasonably foreseen that the chain would part and become wrapped around the sprocket wheel, that the plaintiff to dislodge it would have to pull upon the broken end, and that, in so doing, the chain would likely again part, and that plaintiff would place himself in such position with reference to the rapidly revolving saws that the sudden parting of the links would cause his arm to fly back against them."

Likewise, in all the other decisions cited, the negligence charged was held not to be the proximate cause of the injury, because it appeared that the injury could not reasonably have been foreseen as a result of the negligence. Under the rule announced in Ry. v. Bigham, appellant's contention now under discussion must be overruled, since the evidence was sufficient to sustain a finding by the jury that plaintiff's injury was the natural and probable consequence of appellant's negligence in maintaining the set screw at such a height and in such a position as to catch his clothing, and that such a consequence ought reasonably to have been anticipated. The fact that plaintiff jerked himself over in close proximity to the line shaft in an effort to replace the belt was an intervening agency or cause, it is true, but if he was guilty of no negligence in so doing, and if he did not assume such a risk, as was found by the jury, then appellant ought to have foreseen that he might thus come in contact with the set screw in discharging the duties of his employment. Longview Cotton Oil Co. v. Thurmond, 55 Tex. Civ. App. 499, 119 S. W. 130; Bonn v. G., H. & S. A. Ry. Co., 82 S. W. 808.

The evidence shows that there was a board attached to posts and extending above the place where the plaintiff stood at the time he attempted to replace the belt upon the pulley, and that this board was used as a support or brace by some of appellant's servants who had preceded plaintiff in performing the services which plaintiff was performing at the time of the accident, and, according to a preponderance of the evidence, the board was in easy reach of the plaintiff, and he could have supported himself while attempting to replace the belt by placing his left hand thereupon.

It is insisted that the negligence, if any, in permitting the set screw to protrude above the surrounding surface of the coupler was not the proximate cause of the injury, as defendant could not reasonably have anticipated that plaintiff would voluntarily and knowingly risk injury to himself by failing to support himself by holding with one hand to the brace, while he leaned over the line shaft and exerted his strength to adjust the belt with the other hand, by reason of which position and by reason of a lack of such support of his body, he either fell or was jerked upon and against the line shaft;

and furthermore, that as those facts were conclusively proven, it should be held, as a matter of law, that plaintiff assumed the risk of his injury, or else was guilty of negligence proximately contributing to his injury. Plaintiff's testimony relative to his knowledge of the brace was not very clear. In answer to questions propounded on cross-examination he first said:

"I don't remember no kind of brace or anything of the kind there. * * * I admit, if I could reach that brace, if it was there, strong, well-made, a good handhold, just the right distance—that is, the natural distance—I admit that would be the proper way to put it on; and I admit that it would be very dangerous for a man to get out here on this plank, and undertake to fool with machinery like that, without any brace, or holding to anything. While I was out there I was touching nothing except this plank with my feet and this belt."

Upon further interrogation he said:

"I remember plank D shown in picture No. 4. I remember it being there when I was injured. I do not believe that any man could reach that plank and pull that belt on. A man has got to have a long arm to reach back to that plank."

Picture No. 4, referred to, was introduced in evidence, and plank D shown therein was the brace which other witnesses testified was in easy reach of a person while adjusting the belt upon the pulley, and that it had been used as a support by other employés performing the service which plaintiff was performing at the time of his injury. But plaintiff further testified that he did not know of the presence of the set screw in question. As shown by the verdict of the jury when read in the light of the court's charge, the set screw caught in plaintiff's clothing and hurled him to the floor below, and that but for the extension of the set screw above the surrounding surface of the coupler, the accident would not have happened. If he was excusably ignorant of the presence and condition of the set screw as found by the jury, and which finding is supported by evidence, then he did not assume the risk of having his clothing caught by it, nor was he guilty of contributory negligence in filing to avoid contact therewith. See Longview Cotton Oil Co. v. Thurmond, supra; Waggoner v. Porterfield, 55 Tex. Civ. App. 169, 118 S. W. 1094; Galveston Oil Co. v. Thompson, 76 Tex. 235, 13 S. W. 60. And if he did not assume such risk, and if he was exercising ordinary care for his safety at the time of the accident, then it cannot be said that defendant could not reasonably have foreseen that he might come in contact with the set screw while attempting to replace the belt upon the pulley.

[4] Complaint is made of the refusal of special charge No. 2 requested by the defendant, which is, in effect, that if at the time of plaintiff's accident he was standing with his right foot on the running board and his left foot across the line shaft near the coupling, and that while in that position his clothing was caught on the set screw and he was injured, in consequence thereof, and that a person of ordinary prudence would not have

taken such a position, then a verdict should be returned in favor of the defendant. The assignment complaining of the refusal of this instruction is overruled, for the reason that the trial court gave another special instruction requested by the defendant upon the same issue and substantially to the same effect.

[5] Error has been assigned to the following paragraph in the court's charge to the jury:

"If you believe and find from the evidence in this cause that the agents of defendant, who were in charge of the oil mill at the time of the injury in question, permitted the set screw, resting in the coupling of the line shaft connected with the machinery in defendant's said mill in which plaintiff was employed, to protrude outward and beyond the surface of said coupling and line shaft, and near the place where the plaintiff was required to go and be, in the course of his duties, and if you believe from the evidence that the defendant's agent or agents in charge of said mill were guilty of negligence in permitting said set screw to so be and remain, if such be the fact, and that, while plaintiff was attempting to place a belt on a pulley on said line shaft, his clothing was caught by said set screw, and thereby caused him to receive the injuries complained of, and if you further find from the evidence that his injuries were the direct and proximate result of such negligence, if any, and if plaintiff is not precluded from a recovery by subsequent instructions given you herewith, then you will find for the plaintiff."

By one proposition submitted under this assignment it is insisted that the charge was inapplicable to the facts of the case and misleading, because it was conclusively shown that plaintiff could not have come in contact with the set screw or the line shaft without first falling or jerking himself from the running board and on to the line shaft. This contention must be overruled, because plaintiff testified that he did not fall or jerk himself from the running board on to the line shaft, and other evidence was introduced which warranted a finding by the jury that he was jerked from the running board by having his clothing caught upon the set screw. Another objection to the charge is that the evidence conclusively shows that the negligence, if any, in permitting the set screw to extend above the coupling was not the proximate cause of plaintiff's injury, but that the proximate cause of the injury was his falling or jerking himself from the running board on to the line shaft. This objection is overruled for the reasons already noted.

[6] Error has been assigned to the following instruction given by the trial court:

"(2) In determining whether defendant's agents in charge of said mill at the time were guilty of negligence in respect to the matters submitted to you in the foregoing section of this charge, you are instructed that it was the duty of defendant's agents in charge of said mill to exercise ordinary care to inspect, keep, and maintain its said line shaft and coupling and set screw thereto attached in a reasonably safe condition, failing which the defendant and its agents in charge would be guilty of negligence."

The objection to that charge is that it was "calculated to lead the jury to believe that appellant would be required to exercise ordinary care to inspect, keep, and maintain the line shaft, coupling, and set screw in a reasonably safe condition, irrespective of whether or not appellant's servants in the ordinary performance of their duties would be required to bring their clothing or body in contact with such set screw, and irrespective of the question whether or not appellant or its agents, in the exercise of ordinary care, would have foreseen or anticipated such contingencies." In determining whether or not the defendant exercised ordinary care in the matters stated, it was the duty of the jury to consider all the facts and circumstances in evidence bearing upon that issue, including the probability of plaintiff's clothing coming in contact with the set screw. The charge was a correct statement of the law, and if appellant desired an amplification of the instruction upon that issue, it should have requested an instruction to that effect.

[7] Error has been assigned to the following instruction given by the court:

"(6a) If you believe from the evidence that, as plaintiff stood in attempting to place the belt on the pulley, on the occasion in question, there was a plank or board in easy convenient reach above the line shaft, by which he could have steadied or supported himself with one hand while he put on the belt with the other, and if the plaintiff did not hold to said plank, while attempting to put on the belt at the time he claims to have been injured, but assumed some other position, and if you believe the plaintiff, in so attempting to put on the belt by not holding to said board or plank, failed to use ordinary care, and that such want of ordinary care, if any there was, was the proximate cause of plaintiff's injury, or proximately contributed thereto, you will find for the defendant. But in this connection you are instructed that, if you believe from the evidence that the set screw in question, at the time, did project beyond the surface of the coupling on the shaft, and was in a dangerous condition, yet if the plaintiff did not know of the set screw, or in the course of his duties must not have known of same, or if the same was not obvious—that is, open to the observation of a person of ordinary prudence under like circumstances and conditions—then the plaintiff, in selecting a method of putting on the belt, would not be held to the duty of taking into consideration the set screw in question, and if you so believe you will not attribute to plaintiff notice of the existence or danger of the set screw, if it was dangerous, in determining the question of plaintiff's want of ordinary care, as submitted to you in this paragraph of this charge."

The latter portion of the instruction beginning with "but in this connection you are instructed" is criticized as being, upon the weight of the evidence, to appellant's prejudice and an undue limitation upon its defense of contributory negligence, since it was clearly shown that a more safe method of performing the service could have been adopted by the plaintiff, in that he could have supported himself by holding to the brace. We are of the opinion that these criticisms are without merit. Plaintiff testified positively that he did not know of the presence of the set screw, and, by way of excuse for not having observed it, testified that on the occasion of the accident, and upon all

prior occasions when he was performing the same service, the machinery was in operation with the line shaft revolving, and that the place in which he was working was dimly lighted. In passing upon the issue of plaintiff's contributory negligence it was proper for the jury to take into consideration those facts which were specially pleaded by the plaintiff as an excuse for his lack of knowledge of the set screw, and we are of the opinion that there was no error in the instruction.

[8] The same paragraph of the charge is further criticized for submitting as a disputed issue whether or not the negligence, if any, of the plaintiff in failing to support himself by holding to the board or plank contributed to his injury. As noted already, the jury found that the cause of the injury was the catching of plaintiff's clothing in the set screw. We think that, under the evidence, it was, at all events, a disputed issue whether or not, if plaintiff had held to the brace with his left hand, while attempting to adjust the belt, he would not have come in contact with the set screw, or if his clothing was caught on the set screw, that he could have successfully resisted being thrown to the floor below. Accordingly, this contention is overruled.

Special charges Nos. 8 and 9 requested by appellant, and upon the refusal of which two other assignments are predicated, on the issue of plaintiff's contributory negligence in failing to support himself by holding to the brace while attempting to replace the belt, were substantially covered by the instruction given by the court and last quoted.

The judgment is affirmed.

SPEER, J., not sitting.